MYERS, P.J.,
 

 for the Court:
 

 ¶ 1. Curtis Burnett, Jr., instituted this civil action in the Circuit Court of Panola County after the denial of his claim for uninsured/underinsured motorist benefits (UM), uninsured motorist property damage (UMPD), and medical payments benefits (MedPay) against his insurance policy with State Farm Mutual Automobile Insurance Company (State Farm). Burnett asserted claims against State Farm for the bad-faith refusal of said benefits, breach of duty of good faith and fair dealing, breach of fiduciary duty, and negligent procurement of insurance coverage. State Farm filed a motion for summary judgment, averring that due to a material misrepresentation regarding ownership of Burnett’s vehicle, the policy should be deemed void ab initio, or it should be determined that Burnett was not an insured under Curtis Burnett, Sr.’s (father) policy because he was not a resident relative of his father’s household. In the alternative, State Farm sought partial summary judgment on the issue of bad faith and punitive damages.
 

 ¶ 2. The circuit court found that there was a material misrepresentation in the purchase of the insurance contract, and granted State Farm’s motion for summary judgment. From that judgment, Burnett appeals to this Court.
 

 ¶ 3. We conclude, however, that this matter is not properly before the Court because the circuit court’s order did not terminate the action against all defendants, and Burnett failed to have the circuit court’s judgment certified as a final judgment pursuant to Rule 54(b) of the Mississippi Rules of Civil Procedure. Therefore, we dismiss this appeal for lack of jurisdiction.
 

 FACTS
 

 ¶ 4. Burnett was injured in an automobile accident that occurred on September
 
 *1262
 
 21, 2001. Burnett, who was twenty-three years old at the time, was riding as the passenger in his 1985 Buick Regal, while his girlfriend, Shante Pratt, was driving. The Buick was traveling on Highway 6 in Batesville, Mississippi, when another vehicle, owned by Lee Franklin, allegedly pulled out in front of the Buick. The two vehicles collided, and Burnett suffered injuries as a result.
 

 ¶ 5. Shortly thereafter, Burnett obtained legal counsel. Burnett, along with his mother, Mary Burnett, then visited the office of State Farm agent Ronnie Darby and informed an employee working in the office of the accident. According to Burnett, they were turned away, despite having had UM, UMPD, and MedPay coverage on the Buick. Instead, they were instructed to pursue compensation from the people that had caused the wreck.
 

 ¶ 6. Through his attorney, Burnett later provided State Farm with medical information pertaining to his injuries. Burnett claimed that his medical records showed that he had suffered a severe left-knee injury as a result of the accident, which eventually would require surgery and could potentially designate him with “a permanent-disability rating.” Burnett informed State Farm that he was insured under three separate insurance policies, two of which contained $50,000 in UM coverage. According to Burnett, the third policy, which covered the Buick, did not show any UM coverage; but because no valid rejection documents existed with this policy, he submitted that he was entitled to UM coverage on this policy by default. Based on Burnett’s calculations, he had available to him stacked UM limits of $150,000. He thus proposed to State Farm that due to the severity of his injuries, $150,000 was a reasonable settlement value.
 

 ¶ 7. State Farm, however, informed Burnett’s counsel that it had an issue with regard to the severity of injuries Burnett was claiming, and it wanted to investigate the matter further before submitting payment. According to State Farm, the medical records obtained from Burnett’s visit to the emergency room immediately following the accident did not match the medical report from the physician who later diagnosed Burnett as having a “torn anterior cruciate ligament” in his left knee.
 

 ¶ 8. State Farm also provided Burnett’s counsel with a copy of a UM rejection form from a previous policy covering a 1982 Chevrolet pickup truck. According to State Farm the Chevrolet pickup truck was replaced by the Buick as the coverage vehicle, and no other changes were made to the policy itself.
 

 ¶ 9. On April 1, 2003, after having retained new legal counsel, Burnett filed suit against both State Farm and Franklin. He sought extra-contractual and punitive damages from State Farm on the basis that the insurer had engaged in the bad-faith refusal of insurance benefits, breach of duty of good faith and fair dealing, breach of fiduciary duty, and negligent procurement of insurance coverage. Franklin was named as a defendant in the suit for allegedly causing the accident.
 

 ¶ 10. At his deposition, Burnett testified that he was the primary driver of the Buick, and it was titled in his name. He said that he paid the monthly insurance premiums owed to State Farm on the Buick through his father. When asked whose name the policy was in, Burnett indicated that he thought the policy was in his father’s name, but he was not sure. Burnett also disclosed that at the time of the accident he resided in an apartment in Batesville, Mississippi, with his girlfriend. He added, however, that he continued to periodically live with his parents at their home in Courtland, Mississippi.
 

 
 *1263
 
 ¶ 11. On August 16, 2006, State Farm filed a motion for summary judgment claiming that each of Burnett’s claims must fail as a matter of law due to a material misrepresentation as to the ownership of the subject vehicle. That motion was heard by the circuit court on May 17, 2007. Based on Burnett’s disclosures, State Farm argued that the Buick was owned by Burnett, but the policy was procured in the name of his father. State Farm presented an affidavit from, David Hartlein, an underwriting section manager with State Farm, which stated that State Farm issued policy number C20842924A to Burnett’s father and charged certain premiums based upon information that he provided. The affidavit stated that had State Farm been provided true and accurate information regarding ownership of the vehicle in question then State Farm would not have agreed to provide coverage on the same terms.
 

 ¶ 12. State Farm also submitted that because Burnett lived in an apartment with his girlfriend at the time of the accident, he was not a resident of his father’s household as defined by either Mississippi’s UM statute or the UM provisions outlined in the insurance policy. State Farm added that even if it could be shown that Burnett was a resident for UM purposes, he still could not qualify as an insured under the MedPay provisions of the policy which require that he reside “primarily” with the policy holder.
 

 ¶ 13. Additionally, State Farm argued that there was no evidence to support Burnett’s claim that State Farm had acted in bad faith since it had legitimate and arguable reasons for its actions, and that the parties have at all relevant times been involved in an honest dispute over coverage. State Farm said that it had paid the initial, accident-related medical expenses submitted by Burnett’s first attorney, and it had reasonably questioned the relationship of other injuries to the accident. State Farm argued that no evidence existed which would show that it acted with malice, wantonness, or reckless disregard for the rights of its insured.
 

 ¶ 14. On May 30, 2007, the circuit comb granted State’s Farm motion for summary judgment. The circuit court found that the deposition testimony of Burnett indicated that he was the owner of the Buick at the time of the accident and that he had never purchased insurance on the vehicle. The circuit court ruled that there was a material misrepresentation in the purchase of the insurance contract as State Farm was entitled to know who the policy was issued to as well as who was the owner of the automobile, and that State Farm had a right to rely upon the information furnished by the applicant, who in this case was Burnett’s father. The circuit court held that because there was no valid contract of insurance on the Buick, State Farm was without a duty to compensate Burnett for any of his losses; thus, State Farm was granted summary judgment on all issues claimed by Burnett.
 

 ¶ 15. Aggrieved, Burnett filed this appeal.
 

 ANALYSIS
 

 ¶ 16. Although neither party raised the issue, we must address, sua sponte, the question of whether the circuit court’s order is appealable.
 
 Williams v. Delta Reg’l Med. Ctr.,
 
 740 So.2d 284, 285 (¶ 5) (Miss.1999). Rule 54(b) states:
 

 Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties
 
 *1264
 
 only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment. In the absence of such determination and direction, any order or other form of decision, however designated which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the lights and liabilities of all the parties.
 

 ¶ 17. “Without the entry of a Rule 54(b) eertificate[,] a trial court order, which disposes of less than all the of the claims against all of the parties in a multiple[-]party or multiple[-]elaim action, is interlocutory.”
 
 Owens v. Nasco Inter., Inc.,
 
 744 So.2d 772, 774 (¶ 8) (Miss.1999) (citing
 
 Williams,
 
 740 So.2d at 285 (¶ 6)).
 

 ¶ 18. This case involves multiple defendants, State Farm and Franklin. The circuit court’s order did not terminate the action, did not make any adjudication concerning Franklin, and was not certified pursuant to Rule 54(b) as a final judgment as to State Farm.
 
 Williams,
 
 740 So.2d at 285 (¶ 7). Based on the plain language of Rule 54(b), the order is interlocutory and not appealable.
 
 Id.
 
 Therefore, we dismiss this appeal for lack of an appealable order.
 

 ¶ 19. THIS APPEAL IS DISMISSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.